<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CARMINE D'ANDREA and JENNIFER D'ANDREA, <br><br> Plaintiffs, <br><br> v. <br><br> RONALD ALBERT GELOK, JR.; RONALD GELOK AND ASSOCIATES LLC; ABC CORPORATIONS 1-10 (Fictitious Names); and JOHN DOE/JANE DOE 1-10 (Fictitious Names), <br><br> Defendants. | Civil Action No. 22-00491 (GC) (TJB) <br><br> **OPINION** |

<u>**CASTNER, District Judge**</u>

This matter comes before the Court upon Defendants Ronald Albert Gelok, Jr., and Ronald Gelok and Associates LLC's Partial Motion to Dismiss (ECF No. 32) the Amended Complaint (ECF No. 29), pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Plaintiffs Carmine D'Andrea and Jennifer D'Andrea opposed (ECF No. 35), and Defendants replied (ECF No. 38). The Court has carefully considered the parties' submissions and decides the motion without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendants' motion is **DENIED**.

I.  **BACKGROUND**

    A.  PROCEDURAL HISTORY

On December 17, 2021, Plaintiffs filed this case in the Superior Court of New Jersey. (ECF No. 1-1.) On February 1, 2022, within thirty days after service of process, Defendants removed the case to federal court.[1] (ECF No. 1 ¶ 3.) Defendants then filed a motion to dismiss Plaintiffs' complaint. (ECF No. 6.) Plaintiffs opposed and filed a cross-motion for leave to submit an amended complaint. (ECF Nos. 16, 17.) The Court administratively terminated Defendants' motion to dismiss pending resolution of the cross-motion, preserving Defendants' right to refile their motion following the disposition of Plaintiffs' cross-motion. (ECF No. 23.)

Following briefing by the parties, the Court granted Plaintiffs' motion for leave. (ECF Nos. 24, 25.) The Court, applying the liberal amendment standard to certain of Plaintiffs' proposed allegations, found that "the elements of each claim have been sufficiently plead such that the proposed amendments are not clearly futile." (ECF No. 24 at 8-11.[2]) The Court declined, however, to "engage in a detailed futility analysis where . . . these arguments are better suited for consideration in the context of a motion to dismiss." (*Id.* at 11 (quoting *Colombo v. Bd. of Educ. for the Clifton Sch. Dist.*, Civ. No. 11-0785, 2016 WL 6403081, at *2 (D.N.J. Oct. 27, 2016)).) As to Defendants' statute-of-limitations defense, the Court found that the defense "involves a dispute over the interpretation of facts," particularly as to the financial products that Plaintiffs put at issue here — an annuity purchased in 2015 and a life insurance policy purchased in 2018. (*Id.* at 12.) For efficiency, the Court instructed Plaintiffs to identify in their forthcoming amended complaint

---

[1]    Subject-matter jurisdiction is based on 28 U.S.C. § 1331.

[2]    Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

specifically which of the two products "gives rise to each allegation in the Amended Complaint." (*Id.* at 13.)

Shortly after, Plaintiffs filed the Amended Complaint. (ECF No. 29.) Defendants' partial motion to dismiss followed. (ECF No. 32.)

### B.   PLAINTIFFS' ALLEGATIONS[3]

Plaintiffs are spouses who are retired. (ECF No. 29 ¶¶ 1, 7.) Gelok is an investment adviser registered with the Securities and Exchange Commission and the Financial Industry Regulatory Authority. (*Id.* ¶ 2.) Gelok is the principal and owner of Ronald Gelok and Associates, LLC ("Gelok LLC"), an investment firm registered with the SEC. (*Id.* ¶¶ 3-4.)

This case arises from Plaintiffs' purchase in 2018 of an Indexed Universal Life Insurance Policy from Minnesota Life Insurance Company (the "Minnesota Policy"), using funds from their retirement savings, all at Gelok's solicitation, advice, and recommendation. (*Id.* ¶¶ 28-30, 37.) Plaintiffs allege that when applying for the Minnesota Policy, unbeknownst to Plaintiffs, Gelok wildly overstated Plaintiffs' liquid net worth so that Plaintiffs would qualify for the policy that was unsuitable for them. (*Id.* ¶¶ 38-42.) This alleged misrepresentation caused Plaintiffs to purchase a policy that they could not afford, resulting in considerable financial losses without any benefit to Plaintiffs. (*Id.* ¶¶ 44-63.) The Court assumes the parties' familiarity with the rest of the factual background and will discuss relevant allegations where applicable.[4]

---

[3] When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court typically accepts as true all well-pleaded facts in the complaint. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022) (quoting *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008)).

[4] For a detailed recitation of the factual background and amendments to the complaint, see the Court's Memorandum Opinion at ECF No. 24.

Plaintiffs assert ten causes of action: violation of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder (Count One); violation of New Jersey's Uniform Securities Law, N.J. Stat. Ann. § 49:3-52 (Count Two); breach of fiduciary duty (Count Three); negligence (Count Four);[5] misrepresentation (Count Five); breach of contract (Count Six); *respondeat superior* (Count Seven); failure to supervise (Count Eight); fraud (Count Nine); and violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1 *et seq.* (Count Ten). (ECF No. 29 ¶¶ 98-202.) Defendants move to dismiss Counts One, Two, Five, Six, Nine, and Ten of the Amended Complaint. (ECF No. 32.)

## II.    LEGAL STANDARD

On a motion to dismiss for failure to state a claim upon which relief can be granted, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears

---

[5]    Although Count Four is titled "NEGLIGENCE," the count's allegations resemble those of a claim for negligent misrepresentation, and thus the Court will treat the claim as such.

the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

## III. DISCUSSION

Defendants assert four reasons to dismiss the Amended Complaint. (ECF No. 32-3.) *First*, Plaintiffs' securities-law claims relating to the Minnesota Policy are time-barred. (*Id.* at 13-14.) *Second*, Plaintiffs lack standing to assert their securities-law claims. (*Id.* at 14 n.3.) *Third*, Plaintiffs have not pled with particularity actionable claims for violations of federal securities laws, misrepresentation, fraud, and consumer fraud. (*Id.* 32-3 at 14-18.) *Fourth*, and finally, Plaintiffs have failed to properly plead a breach-of-contract claim under New Jersey law. (*Id.* at 18-20.)

### A. SECURITIES-LAW CLAIMS

The parties agree that Plaintiffs' securities-law claims are subject to the discovery rule.[6] The federal securities-law claims "may be brought not later than the earlier of (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation." 28 U.S.C. § 1658(b). For New Jersey securities-law claims, "[n]o person may bring an action . . . more than two years after the contract of sale or the rendering of the investment advice, or more than two years after the time when the person aggrieved knew or should have known of the existence of his [or her] cause of action, whichever is later." N.J. Stat. Ann. § 49:3-71(g).

The parties disagree, however, about when Plaintiffs should have discovered their claims. Defendants contend that in the insurance-policy context, New Jersey's discovery rule "places the time of diligent 'discovery' at the moment the insured *receives* the insurance policy." (ECF No.

---

[6] (*See also* ECF No. 24 at 12 (finding parties agree that Plaintiffs' securities-law claims are subject to 28 U.S.C. § 1658(b) and N.J. Stat. Ann. § 49:3-71(g)).)

32-3 at 13.)  For this contention, Defendants cite *James v. State Farm Ins. Co.*, where the Superior Court of New Jersey, Appellate Division, noted that "[i]nsureds are under a duty to examine their insurance documents and to notify the insurer if there is a discrepancy between what they initially requested and what the insurer has actually provided."  202 A.3d 23, 29 (N.J. Super. Ct. App. Div. 2019) (citing *Millhurst Mill. & Drying Co. v. Auto. Ins. Co.*, 107 A.2d 46, 52 (N.J. Super. Ct. App. Div. 1954)).  Defendants thus assert that because Plaintiffs received the Minnesota Policy on or about January 18, 2018, the statute of limitations of Plaintiffs' securities-law claims relating to the Minnesota Policy expired two years later, on January 19, 2020, before Plaintiffs filed this action. (ECF No. 32-3 at 13-14.)

Plaintiffs counter that, "at a minimum, the face of the Amended Complaint does not show that [Plaintiffs] were aware of the wrongful conduct outside of the two-year" statute-of-limitations period.  (ECF No. 35 at 19.)  Plaintiffs reason that, as they allege in the Amended Complaint, they did not discover Defendants' allegedly wrongful conduct "until at least 2020."  (*Id.* at 18; *see* ECF No. 29 ¶ 94 ("[Plaintiffs] continued to trust and rely on Gelok's advice for years, and did not begin to learn that he had made misrepresentations and otherwise acted improperly until 2020.").) Plaintiffs assert that Defendants' "continuing and ongoing wrongful conduct after the policy was delivered" occurred within the two-year limitation period.  (ECF No. 35 at 20.)

"Technically, the Federal Rules of Civil Procedure require a defendant to plead an affirmative defense, like a statute of limitations defense, in the answer, not in a motion to dismiss." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).  A statute-of-limitation defense may, however, "be raised by a motion under Rule 12(b)(6) only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."  *Id.* (citations and internal quotation marks omitted).  "What all this means is that the statute of

6

limitations will support dismissal under Rule 12(b)(6) only in the very clear case where a plaintiff has pled itself out of court." *Allegheny Plant Servs., Inc. v. Carolina Cas. Ins. Co.*, Civ. No. 14-4265, 2017 WL 3234379, at *4 (D.N.J. July 28, 2017).

Minding these standards, the Court concludes that Plaintiffs' securities-law claims are not "very clear[ly]" time-barred. According to the Amended Complaint, the crux of Plaintiffs' action is that Gelok recommended and sold Plaintiffs an insurance policy that was "unsuitable, unreasonable and inappropriate" given Plaintiffs' "objective of protecting principal and generating income . . . while limiting/deferring taxes." (ECF No. 29 ¶¶ 15-16, 102-104.) Plaintiffs allege that Defendants' overstating Plaintiffs' income and liquidity in their application for the Minnesota Policy, unbeknownst to Plaintiffs, caused Plaintiffs to qualify for this policy, which was unsuitable for them. (*Id.* ¶¶ 38-41, 51-61.) And Plaintiffs allege that they "did not learn that Gelok had overstated their 'liquid' net worth in order to obtain the policy until 2021" (*Id.* ¶ 95), which, if true, may put Plaintiffs' action within the statute-of-limitations period. Viewed in a light most favorable to Plaintiffs — as the Court must at the motion-to-dismiss stage — the allegations demonstrate that Plaintiffs did not discover until 2020 or 2021 that the Minnesota Policy did not match their financial profile.

The Court's ruling does not conflict with the duty discussed in *James*: that an insured is "obligated to alert [the insurer] of the inconsistencies between what [the insured] allegedly requested and what the policy provided." 202 A.3d at 30. In *James*, plaintiffs claimed that they did not discover that their Personal Injury Protection coverage was only $15,000.00, not the $250,000.00 that they allegedly requested, until after the insureds were involved in a car accident. *Id.* at 25. Key to that coverage dispute was the undisputed fact that plaintiff "did not review the documents State Farm sent him that contained his insurance policy and automatic renewal forms."

7

*Id.* at 29. Rejecting what it called plaintiffs' "willful blindness," the court concluded that "a review of the documents would have revealed that State Farm did not provide the coverage [plaintiff] allegedly requested," that plaintiff "had multiple opportunities to correct this alleged error long before the 2014 accident by reviewing the automatic renewal pages and other documents State Farm provided to him," and that "[t]hese documents were specifically designed to apprise consumers like [plaintiff] about the content of their insurance policy and the coverages available." *Id.* at 29-30.

This case is distinguishable from *James*. Plaintiffs are not, for instance, challenging the death benefit of the Minnesota Policy or claiming that the policy was not as tax advantageous as marketed; indeed, such claims of inconsistencies would arguably fall within the court's ruling in *James*. Rather, Plaintiffs' action is one of suitability. Plaintiffs allege that they "relied on Gelok's advice and recommendations entirely when they agreed to purchase the Minnesota Policy, including but not limited to the application process and the selection of policy terms." (ECF No. 29 ¶ 37.) Plaintiffs further allege that "[i]n August 2020, as well as at other times, Gelok continued to advise [Plaintiffs] to maintain, hold and further fund the Minnesota Policy" (ECF No. 35 at 18; *see* ECF No. 29 ¶¶ 56-57, 91-93); that they "continued to trust and rely on Gelok's advice for years, and did not begin to learn that he had made misrepresentations and otherwise acted improperly until 2020" (ECF No. 35 at 18; ECF No. 29 ¶ 94); and that they "did not learn that Gelok had overstated their 'liquid' net worth in order to obtain the policy until 2021" (ECF No. 35 at 18; ECF No. 29 ¶ 95). With these allegations, Plaintiffs do not claim that the Minnesota Policy's terms read differently from what Plaintiffs had requested; they claim that Defendants sold them an insurance policy that Defendants insisted was suitable for them but, in fact, was not. And so, afforded all favorable inferences, Plaintiffs have sufficiently alleged that they did not discover

their potential cause of action until they learned that Gelok's misrepresentations in their application caused Plaintiffs to qualify for an insurance policy that was not suitable for them.

The other cases on which Defendants rely — *In re Nw. Mut. Life Ins. Co. Sales Pracs. Litig.*, 70 F. Supp. 2d 466 (D.N.J. 1999), *aff'd*, 259 F.3d 717 (3d Cir. 2001), and *Andrea v. Metro. Life Ins. Co.*, Civ. No. 00-911, 2000 WL 35361960 (D.N.J. Aug. 14, 2000) — are equally inapposite. In both cases, plaintiffs could have discovered the causes of action by simply reading the terms of the policies. *See In re Nw. Mut. Life Ins.*, 70 F. Supp. 2d at 490 (ruling that plaintiff should have discovered no later than the delivery date of the policy that "the policy would operate to require him to make more out-of-pocket payments" than plaintiff expected); *Andrea*, 2000 WL 35361960, at *2 (ruling that "[t]he discrepancy between the terms of the Policy and the misrepresentations allegedly made to [plaintiff] by [defendant's sales representative] should have put [plaintiff] on notice of the current fraud and misrepresentation causes of action no later than the delivery date of the Policy," "[b]ecause the plain and unambiguous terms of the Policy contradicted [the representative]'s alleged misrepresentations, and because [plaintiff] had a duty to read the Policy . . . ").

Here, Plaintiffs' causes of action were not so easily discoverable, according to Plaintiffs' allegations, which enjoy all favorable inferences. Plaintiffs assert that Defendants' "continuing and ongoing wrongful conduct" prevented Plaintiffs from discovering that the Minnesota Policy was not suitable for Plaintiffs. (ECF No. 35 at 20.) "Under [the continuing-wrong] doctrine, a federal cause of action based upon the defendant's continuing conduct is timely provided that the last act of that continuing conduct is within the period for the commencement of an action specified by the statute of limitations." *Thornton v. Nash*, Civ. No. 06-4727, 2007 WL 433393, at *9 n.5 (D.N.J. Feb. 5, 2007), *order vacated in part on reconsideration*, 2007 WL 4207834 (D.N.J. Nov.

21, 2007) (quoting *Sameric Corp. of Delaware v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998)). In the Amended Complaint, the latest continuing wrong alleged is, "In August 2020, as well as at other times, Gelok continued to advise [Plaintiffs] to maintain, hold and further fund the Minnesota Policy." (ECF No. 29 ¶ 93.) At this stage, Plaintiffs' allegations demonstrate that the statute-of-limitations period may have been tolled, under the discovery rule, the continuing-wrong doctrine, or both, until at least August 2020. *See Novinger Grp., Inc. v. Hartford Ins., Inc.*, 514 F. Supp. 2d 662, 669 (M.D. Pa. 2007) (denying motion to dismiss where allegations demonstrated "the potential applicability of the discovery rule").

Because the exact time that Plaintiffs discovered or should have discovered the violation remains unclear, the Court must deny Defendants' motion to dismiss on statute-of-limitations grounds, without prejudice to Defendants' right to raise their statute-of-limitations argument as an affirmative defense later in the litigation. *See Gordon v. Nice Sys., Inc.*, Civ. No. 18-2168, 2020 WL 2316278, at *3 (D.N.J. May 11, 2020) (rejecting without prejudice defendant's statute-of-limitations defense).

## B. STANDING

Defendants argue that Plaintiffs lack standing to assert their securities-law claims. Defendants contend that "[u]niversal life insurance, such as the Minnesota Policy, has not been held to be a security in New Jersey, and elsewhere in the 3rd Circuit has been held *not* to be a security." (ECF No. 32-3 at 14 n.3.) For their contention, Defendants cite *Novinger Grp., Inc. v. Hartford Ins., Inc.*[7] In *Novinger Grp.*, plaintiffs claimed securities-law violations based on

---

[7]  514 F. Supp. 2d at 673. Defendants also cite *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.* for the general rule that "only a purchaser or seller of a security has standing to bring a private 10b-5 securities fraud action for money damages." 140 F.3d 478, 485 (3d Cir. 1998). (ECF No. 32-3 at 14 n.3.) *Mirage Resorts* did not involve the sale of an insurance policy.

allegations that defendants misled them into purchasing several variable universal life policies and one buy-sell policy as a component of plaintiffs' nonqualified deferred compensation plan. 514 F. Supp. 2d at 664-68. Defendants, here, assert that the court in *Novinger Grp.* "dismiss[ed] plaintiffs' Rule 10b-5 securities fraud action for lack of standing where the product purchase[d], a universal life insurance policy, was not a security." (ECF No. 32-3 at 14 n.3.) Not so. The district court allowed plaintiff Novinger Group's Rule 10b-5 claims to proceed, while dismissing the individual plaintiffs' Rule 10b-5 claims, because the complaint alleged that defendant sold the policies to Novinger Group only and not to the individual plaintiffs — thus, the individual plaintiffs were not the "purchasers of securities," one of the requirements for standing to assert a Rule 10b-5 claim. *Novinger Grp.*, 514 F. Supp. 2d at 673. But the court in *Novinger Grp.* did not hold universal life insurance "*not* to be a security," as Defendants contend. (*See* ECF No. 32-3 at 14 n.3.) In fact, the court noted that "[b]ecause plaintiffs contend that the policies were marketed primarily as an investment, some question remains as to whether" the policies "qualify as securities for purposes of Rule 10b-5," and that "[t]his issue is more appropriately resolved in the context of a motion for summary judgment." *Novinger Grp.*, 514 F. Supp. 2d at 673 n.15.[8]

---

[8] In their reply papers, Defendants add that the Minnesota Policy does not qualify as a security as defined under New Jersey's Uniform Securities Law, N.J. Stat. Ann. § 49:3-49(m), or according to 15 U.S.C. § 77c(a)(8). (ECF No. 38 at 10.) This does not change the Court's ruling. "Courts must look behind the 'label' to the substance of the agreement to determine whether a particular financial product is an 'annuity contract'" or insurance policy "exempt from the federal securities laws." *Holding v. Cook*, 521 F. Supp. 2d 832, 837 (C.D. Ill. 2007). Indeed, determining whether an insurance policy or annuity contract is excluded from the definition of "securities" under federal or state law typically requires a review of the product's terms. *See, e.g.*, *Am. Equity Inv. Life Ins. Co. v. S.E.C.*, 613 F.3d 166, 174 (D.C. Cir. 2010) (ruling that fixed indexed annuities did not constitute "annuity contract" and thus was not within the exemption to the Securities Act for annuity contracts subject to state insurance laws). This is especially so here, where the Court accepts as true Plaintiffs' allegation that "[t]he Minnesota Policy has complex features and benefits that are variable" (ECF No. 29 ¶ 31) and the Minnesota Policy is not currently before the Court. The issue is better suited for the summary judgment stage.

The same question remains here. Plaintiffs allege that "[t]he Minnesota Policy has complex features and benefits that are variable"; that they "sought professional investment advice to assist them with understanding, managing and purchasing investments"; that their "primary investment objective for their retirement funds has been and remains capital preservation and income with a low tolerance for risk"; and that "[w]hen [Plaintiffs] met Gelok, . . . [t]heir goal was to invest the retirement funds in [Plaintiff's] account." (ECF No. 29 ¶¶ 8-9, 13, 31.) And there is no dispute that Plaintiffs purchased the Minnesota Policy.

Thus, the Court denies Defendants' motion to dismiss on standing grounds, without prejudice to Defendants' right to assert the argument at a later stage.

### C. CLAIMS SOUNDING IN FRAUD

Defendants argue that Plaintiffs failed to plead with particularity actionable claims for violations of federal and state securities laws (Counts One & Two); misrepresentation (Count Five); fraud (Count Nine); and consumer fraud under the NJCFA (Count Ten). (ECF No. 32-3 at 14-18.) These claims have overlapping elements described below.

To state a claim under the Exchange Act and Rule 10b-5, a plaintiff must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Barbee v. Amira Nature Foods, Ltd.*, Civ. No. 21-12894, 2023 WL 4627744, at *4 (D.N.J. July 19, 2023) (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011)).

New Jersey's Uniform Securities Law creates a cause of action against any person who "[o]ffers, sells or purchases a security by means of any untrue statement of material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the

circumstances under which they are made, not misleading (the buyer not knowing of the untruth or omission)." N.J. Stat. Ann. § 49:3-71(a)(2). A claimant must show that the defendant "knew of the untruth or omission and intended to deceive the buyer" and that the buyer suffered a loss. *Id.* § 49:3-71(b)(1)-(2).[9]

The elements of intentional misrepresentation and fraud are the same: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Caspersen as Tr. for Samuel M.W. Caspersen Dynasty Tr. v. Oring*, 441 F. Supp. 3d 23, 38 n.6 (D.N.J. 2020) (quoting *Suarez v. E. Int'l Coll.*, 50 A.3d 75, 85 (N.J. Super. Ct. App. Div. 2012)).[10]

To assert a claim under the NJCFA, which is subject to the particularity requirement of Rule 9(b), a plaintiff must allege three elements: (1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss. *Kaplan v. Gen. Elec. Co.*, Civ. No. 22-05296, 2023 WL 4288157, at *7 (D.N.J. June 30, 2023) (citing *Int'l Union of Operating Engineers Loc. No. 68 Welfare Fund v. Merck & Co.*, 929 A.2d 1076, 1086 (N.J. 2007)). To satisfy the first prong, plaintiff must

---

[9] Courts analyzing NJUSL claims have relied on federal case law. *See, e.g.*, *Commodity Futures Trading Comm'n v. Am. Metals Exch. Corp.*, 775 F. Supp. 767, 783 (D.N.J. 1991), *order aff'd in part, vacated in part*, 991 F.2d 71 (3d Cir. 1993) ("Section 49:3-52 is virtually identical to Section 10(b) and Rule 10b-5 in imposing liability for fraud in connection with the offer, sale or purchase of any security . . . directly or indirectly. Given the identity of language between Rule 10b-5 and Section 49:3-52, I will use federal precedent construing Rule 10b-5 in deciding the plaintiffs' claim under Section 49:3-52." (internal quotation marks omitted)).

[10] *See Conte v. Promethean Inc.*, Civ. No. 21-20490, 2022 WL 4596727, at *5 (D.N.J. Sept. 30, 2022) (listing the elements of a claim for intentional misrepresentation as "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages" (quoting *Donnelly v. Option One Mortg. Corp.*, Civ. No. 11-7019, 2014 WL 1266209, at *11 (D.N.J. Mar. 26, 2014))).

demonstrate that defendant engaged in an "unlawful practice," which is defined in the NJCFA to include "any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate." N.J. Stat. Ann. § 56:8-2. Courts have derived from that definition three broad categories of unlawful conduct: (i) affirmative acts, which include unconscionable commercial practices, false promises, and misrepresentations; (ii) knowing omissions; and (iii) regulatory violations. *Vaswani, Inc. v. Manjunathamurthy*, Civ. No. 20-20288, 2023 WL 5274610, at *4 (D.N.J. Aug. 16, 2023) (citing *Kaplan*, 2023 WL 4288157, at *7).

Defendants first assert that Plaintiffs do not allege the specifics of Defendants' allegedly materially false or misleading statements — namely, the specific statements or the time the statements were made. (ECF No. 32-3 at 16.) Defendants also assert that Plaintiffs' allegation that Gelok presented Plaintiffs "with projections and related documents that presented unrealistic and/or unattainable returns" is a conclusory allegation of fraudulent intent. (*Id.*) As to Plaintiffs' allegations that Defendants overstated Plaintiffs' financial profile to obtain approval for the purchase of the Minnesota Policy, Defendants assert that "Plaintiffs do not identify any of these alleged forms, indicate the amount by which these metrics were overstated," or "state whether such purportedly overstated amounts were material . . . other than to make the conclusory claim that the product would have been unavailable if the 'correct' amount had been stated." (*Id.* at 16-17.) Finally, Defendants assert that Plaintiffs did not adequately plead that Defendants acted with scienter. (*Id.* at 17.)

Plaintiffs counter by reciting the following allegations from the Amended Complaint:

- Rather than act in the best interest of his clients, Gelok knowingly manipulated and fraudulently completed paperwork and forms to obtain approval for the Minnesota Policy, which was an unsuitable investment. On or about October 3, 2017 and October 10, 2017, Gelok (or his representative) completed applications and related documents for the Minnesota Policy. In those documents, Gelok stated that Ms. D'Andrea had a liquid net worth of $2.6 million, which was untrue. This amount was wildly overstated for the D'Andreas combined, much less just Ms. D'Andrea. [(ECF No. 29 ¶¶ 38-39, 84.)]

- Gelok willfully and intentionally overstated the amount of Ms. D'Andreas income and liquidity to obtain approval for the Minnesota Policy. [(*Id.* ¶¶ 41, 78-79, 84.)]

- It is clear that Gelok knew the numbers he provided on the policy applications were inaccurate as all of the D'Andreas' investable assets were with Gelok. [(*Id.* ¶¶ 42, 65, 66, 79.)]

- In order to induce the D'Andreas to purchase the Minnesota Policy, Gelok advised the D'Andreas prior to purchase, among other things, that the policy was a "tax free alternative." These statements were made in meetings between the parties prior to the policy being issued. However, Gelok knew this was not true because, among other things, the D'Andreas would incur significant tax liability to purchase the Minnesota Policy. Gelok willfully made these misrepresentations to induce the D'Andreas to purchase the Minnesota Policy. [(*Id.* ¶ 34.)]

- In order to induce the D'Andreas to purchase the Minnesota Policy, Gelok advised the D'Andreas prior to purchase, among other things, that the policy would generate guaranteed income of $40,000 a year through loans against the policy and a death benefit in excess of $2 million. These statements were untrue. Gelok willfully made these misrepresentations to induce the D'Andreas to purchase the Minnesota Policy. [(*Id.* ¶ 34.)]

- In order to induce the D'Andreas to purchase the Minnesota Policy, Gelok advised the D'Andreas prior to purchase, among other things, that the policy protected the D'Andreas' principal investment into the policy. These statements were untrue. Gelok willfully made these misrepresentations to induce the D'Andreas to purchase the Minnesota Policy. [(*Id.* ¶ 32.)]

- In order to induce the D'Andreas to purchase the Minnesota Policy, Gelok advised the D'Andreas prior to purchase, among other things, that the policy was a long-term solution for their retirement and that the Minnesota Policy would remain in place. These statements were untrue. Gelok willfully made these misrepresentations to induce the D'Andreas to purchase the Minnesota Policy. [(*Id.* ¶ 60.)]

- The D'Andreas had virtually no understanding of indexed universal life products, the application process to obtain such policies, and the terms of such policies.

>   Accordingly, the D'Andreas reasonably relied on Gelok's advice and recommendations entirely when they agreed to purchase the Minnesota Policy, including but not limited to the application process and the selection of policy terms. Gelok intentionally took advantage of this relationship of trust to enrich himself at the D'Andreas expense. [(*Id.* ¶¶ 36-37.)]
> 
> - Rather than make appropriate and suitable investment recommendations as required by applicable law and standards, Gelok acted in his own best interest by recommending high commission insurance products. [(*Id.* ¶¶ 83, 128, 180-190.)]
> 
> - As a sophisticated financial advisor, Gelok was aware of investment alternatives that would have benefited the D'Andreas, but willfully and intentionally failed to present those options in order earn commissions. [(*Id.* ¶ 188.)]
> 
> [(ECF No. 35 at 24-27 (footnote omitted).)]

In reply, Defendants appear to abandon their pleading-deficiency argument, responding only to Plaintiffs' arguments concerning the statute of limitations, standing, and breach of contract. (*See generally* ECF No. 38.) Defendants' "failure to respond to the pertinent opposition-brief argument acts as a concession of that argument." *Sang Geoul Lee v. Won Il Park*, 720 F. App'x 663, 666 (3d Cir. 2017) (citing *Griswold v. Coventry First LLC*, 762 F.3d 264, 274 n.8 (3d Cir. 2014); *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997)).

Still, the Court agrees with Plaintiffs that the above-listed allegations address Defendants' objections by showing "the who, what, when, where, and how: the first paragraph of any newspaper story," as Rule 9(b) requires. *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). Indeed, Plaintiffs need not allege "every material detail of the fraud such as date, location, and time," as long as they "use 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) (quoting *In re Nice Sys., Ltd. Sec. Litig.*, 135 F. Supp. 2d 551, 577 (D.N.J. 2001)). Without

a response based in law, and drawing all reasonable inferences in favor of Plaintiffs, the Court concludes that Plaintiffs have sufficiently alleged their claims sounding in fraud.

The Court therefore denies Defendants' motion to dismiss Counts One, Two, Five, Nine, and Ten of the Amended Complaint.

### D. BREACH-OF-CONTRACT CLAIM

To state a claim for breach of contract, a plaintiff must plead (1) the existence of a valid contract, (2) that plaintiff performed under the contract, (3) the defendant's breach of the contract, and (4) the damages resulting from the breach. *Pollack v. Quick Quality Restaurants, Inc.*, 172 A.3d 568, 576 (N.J. Super. Ct. App. Div. 2017).

Defendants argue that there is no contract between Defendants and Plaintiffs, as the Minnesota Policy — "the only contract at issue in this case" — is not between Plaintiffs and Defendants, but between Plaintiffs and their insurer, Minnesota Life Insurance Company. (ECF No. 32-2 at 18; ECF No. 38 at 12.) And still, Defendants continue, Plaintiffs failed to identify the provision of the Minnesota Policy that was breached. (ECF No. 32-3 at 19.) Defendants also assert that, to the extent that Plaintiffs assert that Defendants breached an oral agreement rather than the Minnesota Policy, the Amended Complaint includes no specifics "as to the terms, duration, or scope of any" such agreement, or what terms Defendants breached or when or how they breached those terms. (*Id.* 19-20; ECF No. 38 at 12.)

In opposition, Plaintiffs clarify that their breach-of-contract claim arises not from the Minnesota Policy, but from Defendants' agreement to provide investment advisory services to Plaintiffs. (ECF No. 35 at 28.) Plaintiffs assert that a written agreement might exist, considering that the brochure that Defendants file with the SEC states that clients like Plaintiffs must "enter into one or more written agreements with [Defendant] setting forth the terms and conditions under

17

which [Defendant] renders its services." (*Id.*; ECF No. 29 ¶ 21.)[11] But for now, Plaintiffs assert, they have at least stated a claim for breach of an oral agreement with Defendants.[12] (ECF No. 35 at 28.)

The Court agrees. As to the contract, Plaintiffs allege that the parties agreed that "in exchange for certain payments, fees and commissions, Defendants would provide investment advice and recommendations." (ECF No. 29 ¶ 149.) Plaintiffs allege that "Gelok's offer to provide investment services, and [Plaintiffs'] acceptance of that offer, [o]curred in 2015 when [Plaintiffs] first moved their retirement funds to Gelok Associates." (*Id.* ¶ 150.) In addition, Plaintiffs allege that "actual, implied and/or necessary term[s] of the parties' agreements" included that "any advice would be appropriate, suitable and reasonable," that "Defendants would act in a fiduciary capacity and/or in [Plaintiffs'] best interest," and that "Defendants would not make any material misrepresentations and/or omit material information in connection with [Plaintiffs'] accounts and/or investments." (*Id.* ¶¶ 151-153.) For breach, Plaintiffs allege that "[b]y committing the acts alleged herein, [D]efendants breached their contractual obligations to [Plaintiffs] with respect to the Minnesota Policy." (*Id.* ¶ 155.) And Plaintiffs allege that they sustained resulting damages. (*Id.* ¶ 157.) Thus, Plaintiffs have sufficiently pled a claim for breach of a contract that is not so

---

[11] A recent version of Defendant's brochure is available at https://adviserinfo.sec.gov/firm/summary/290950 (last visited Sept. 27, 2023). "The Court may consider documents in the public record, such as SEC filings, on a motion to dismiss without converting it into one for summary judgment." *Swift v. Pandey*, Civ. No. 13-650, 2013 WL 6054853, at *5 n.4 (D.N.J. Nov. 13, 2013) (citing *Beverly Enters., Inc. v. Trump*, 182 F.3d 183, 190 n.3 (3d Cir. 1999)).

[12] A valid oral agreement requires the same elements as a written contract: (1) mutual assent of the parties, (2) consideration, and (3) reasonably certain contract terms. *Cannon v. Commc'n Components, Inc.*, Civ. No. 20-01626, 2022 WL 4300247, at *4 (D.N.J. Sept. 19, 2022) (citation omitted); *see also Luxama v. Ironbound Express, Inc.*, Civ. No. 11-2224, 2021 WL 1153145, at *6 (D.N.J. Mar. 26, 2021) (noting the same "elements apply to both express and implied contracts" (citing *Gardiner v. Virgin Islands Water & Power Auth.*, 145 F.3d 635, 644 (3d Cir. 1998))).

vague and indefinite that it cannot be enforced. *See Labus v. Navistar Int'l Transp. Corp.*, 740 F. Supp. 1053, 1063 (D.N.J. 1990) ("In determining whether an oral contract exists, the court must consider whether the contract is sufficiently clear and capable of judicial enforcement.").

Accordingly, the Court denies Defendants' motion to dismiss Count Six of the Amended Complaint.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, and other good cause shown, Defendants' Motion to Dismiss (ECF No. 32) is **DENIED**. An appropriate Order follows.

Dated: September 28, 2023

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE